UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| REGINA MCDOWELL, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:08-CV-602 SNLJ |
| | ) |
| DONALD BLANKENSHIP, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Remaining for trial in this matter is plaintiffs' claim that defendants used excessive force when they subdued and arrested plaintiffs' decedent, Jimmy Farris, on April 12, 2007. Defendants initially moved to strike several of plaintiffs' expert witnesses, including Dr. Douglas Anderson, on May 17, 2012 (#137). However, Dr. Anderson passed away unexpectedly in July, and plaintiffs sought an extension of the trial date in order to accommodate their search for a new expert witness (#145).

Then, on January 10, 2013, plaintiffs filed a notice of their intent to use Dr. Anderson's deposition at trial pursuant to Federal Rules of Civil Procedure 32(4)(A) and 32(8)(b). Defendants again request that the Court prohibit plaintiffs from offering Dr. Anderson's testimony into evidence at trial.

**I. Case Summary**[1]

Plaintiffs' decedent, Jimmy Farris, died shortly after being subdued and placed into handcuffs by members of the Phelps County Sheriff's Department. An autopsy revealed that Mr.

---

[1] A more complete summary of the facts may be found in this Court's memorandum addressing the defendants' summary judgment motion (#143).

Farris had contusions and abrasions on his wrists, forehead, chest, right side, left elbow, left upper arm, face, and scalp. Mr. Farris's heart was abnormally large, weighing 500 grams, and he was posthumously diagnosed with heart disease. A urine screen showed 4.5 micrograms methamphetamine and 0.60 micrograms amphetamine. The medical examiner determined that Mr. Farris's cause of death was an "accident" due to "hypertensive heart disease exacerbated by methamphetamine during exertion in physical altercation." Plaintiffs' expert, Dr. Anderson, found instead that Mr. Farris died of suffocation, "hypoxia-induced cardiac arrhythmia after aspiration of gastric contents into the airways of the lung."

Plaintiffs are Mr. Farris's mother Regina McDowell, and Mr. Farris's daughter, S.F., who is represented by her next friend, Katherine Jones. Only Count I, 42 U.S.C. § 1983 Deprivation of Constitutional Rights by the deputies involved in the altercation, remains for trial.

**II.     Discussion**

This Court must act as a "gatekeeper" to "insure that proffered expert testimony is both relevant and reliable." *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006) (quoting *Anderson v. Raymond Corp.*, 340 F.3d 520, 523 (8th Cir. 2003)); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Federal Rule of Evidence 702 governs the standard for this Court's admission of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).

Dr. Anderson was a forensic pathologist for nearly 40 years. Plaintiffs intend for him to testify that Mr. Farris did not die as the result of "hypertension heart disease exacerbated by methamphetamine during exertion in physical altercation," which was the cause of death found by the medical examiner. Dr. Anderson's report includes several opinions, which are that:

1. Mr. Farris died of "hypoxia-induced cardiac arrhythmia after aspiration of gastric contents into the airways of the lung." Asphyxial injury was indicated by subgaleal petechia. Contributing factors included "the type and manner of restrain[t], prone position with overlying by 3 or more officers, pre-existing lung disease, injury to 6th rib, right posterior lung hematoma, and use of Mace to the oral/nasal area on 3 occasions, and aspiration of gastric contents."

2. Mr. Farris hyperventilated as a result of anxiety from the traffic stop, and he would have experienced shortness of breath.

3. Handcuffing Mr. Farris would have caused him pain and restricted his breathing.

4. Mr. Farris's rib fracture would have made breathing painful.

5. The hemorrhage in Farris's right lung was caused by blunt force trauma and did not impair respiration.

Defendants argue that Dr. Anderson reached his opinions without considering physical evidence and by making assumptions that are unsupported by the facts. Specifically, defendants state that Dr. Anderson assumed that (1) Mr. Farris vomited and was then rolled to his side, and (2) the defendants did not clear his airway before CPR was administered. Defendants state that Dr. Anderson's assumptions are contradicted by the evidence: First, it is undisputed that Mr. Farris was on his side when he vomited, which is (as Dr. Anderson admits) the best position for vomiting relative to avoiding aspirating material into the lungs. Dr. Anderson admitted that his understanding was that Mr. Farris had not been on his side when he vomited. Second, Dr.

Anderson assumed that Mr. Farris's airways were not checked and clear before CPR was started, but the testimony shows that his airway was checked and, in fact, the paramedic was twice able to insert an endotracheal tube without restriction. Defendants state that the evidence establishes that Farris's airway was clear and could not have aspirated gastric content while at Taco Bell; as a result, defendants argue that Dr. Anderson's opinion that Farris died from aspiration of gastric content is "contrary to the undisputed physical evidence."

Defendants' argument is confusing. They do not appear to contend that Farris did not aspirate gastric content into the lungs — indeed, the medical examiner's report shows that he did. Defendants appear to try to show that they were not responsible for the aspiration by stating that Mr. Farris could not have aspirated while at Taco Bell. However, their arguments regarding how Mr. Farris aspirated do not go to the validity of Dr. Anderson's opinion, which is simply that he *did* aspirate and that it contributed to his death.

At his deposition, counsel asked Dr. Anderson what defendants should have done differently after Mr. Farris vomited. Dr. Anderson said they should have rolled him onto his side and cleared the airway before beginning CPR because otherwise the gastric material only has one way to go when you start CPR — down the trachea. The undisputed testimony is that Farris was on his side when he vomited, and that Officer Moberly did check for a clear airway. Clearly, the Court cannot permit Dr. Anderson to contradict those (undisputed) facts of the case. However, it is not clear to this Court just how the manner of aspiration matters to Dr. Anderson's opinion. The Court will not permit Dr. Anderson to testify that Farris was not on his side or that the officer failed to clear Farris's airway before beginning CPR.

Second, defendants note that Dr. Anderson's opinion that the manner of death was contributed to by his broken rib is inadmissible because Dr. Anderson himself agreed that a broken rib would not cause death. This Court agrees.

Third, defendants take issue with Dr. Anderson's assumption that "3 or more" officers were lying on top of Mr. Farris. Dr. Anderson conceded in his deposition that that statement was inaccurate — that three officers had not been lying on top of Mr. Farris. However, Dr. Anderson testified that his conclusion remains the same even without the fact of three officers lying on top of Mr. Farris. To the extent the testimony designated by the plaintiffs includes testimony that three officers were lying on top of Mr. Farris, that testimony is stricken.

Fourth, although it is not apparent just how plaintiffs would use testimony regarding Dr. Anderson's opinion about the lung hemorrhage, the Court will not permit Dr. Anderson to testify regarding it, because the hemorrhage did not restrict breathing and there is no indication that it contributed to Mr. Farris's death.

The Court will permit Dr. Anderson to testify as indicated. Plaintiffs shall re-submit their deposition designations in accordance with the limitations set forth by this memorandum.

**IV. Conclusion**

Dr. Anderson will be permitted to testify as indicated herein. Accordingly,

**IT IS HEREBY ORDERED** that defendants' renewed Motion to Strike Plaintiffs' Expert Witness Endorsements (#137) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that plaintiffs shall file their revised deposition designations with the Court in compliance with this Court's pretrial order.

Dated this __13th__ day of February, 2013

_____
UNITED STATES DISTRICT JUDGE